IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

GARY DINKEL,

      Plaintiff,

v.                                    No. Civ. 09-388 LH/RHS

CRANE CARE, INC., INMOTION CONTROL, INC.,
MAXWELL, MANNING & MORE,
COLUMBUS MCKINNON CORP.,
ROBINSON ENGINEERING CO., INC., and
DUCT-O-WIRE.

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on two motions:  1) Defendants Robinson Engineering Co., Inc. and Inmotion Control, Inc.'s  Joint Motion to Dismiss Plaintiff's Second Amended Complaint Against Them for Lack of Personal Jurisdiction (Doc. 15), filed May 7, 2009; and 2) Defendant Duct-o-Wire's Motion and Memorandum to Amend Answer and Assert Cross-Claim for Indemnity Against Defendants Inmotion Control, Inc. and Robinson Engineering (Doc. 44), filed November 20, 2009.  The Court, having considered the motions, pleadings, briefs, evidence, and applicable law, and otherwise being fully advised, concludes that the motion to dismiss should be **granted** and that the motion to amend should be **denied**.

# I. BACKGROUND[1]

## A. Commercial History of the Subject Remote Control

At the center of Plaintiff's cause of action are two pieces of equipment that were used during the course of Plaintiff's employment with GCC Rio Grande of America ("GCC"):  1) a Shaw box 30709 crane ("the crane"); and 2) the "Inmotion Control Series 322" remote control that controlled the crane ("the remote control" or "the remote").

Defendant Inmotion Control, Inc. ("Inmotion") participated in the manufacture of the remote control "through design, development, evaluation, modification and testing of remotes including, but not limited to, the subject remote."[2]  (Pl.'s Second Amended Complaint 11.)  Inmotion then sold the remote control to Defendant Duct-o-Wire, shipping it to an address in Oconomowoc, Wisconsin.[3]  (Mtn. to Dismiss, Ex. B, at ¶ 9, Ex. C.)  At the time that Inmotion sold the remote control to Duct-o-Wire, it did not know that it would ultimately arrive in New Mexico.  (Mtn. to

---

[1] The following facts are taken from Plaintiff's Second Amended Complaint, the parties' briefs, and the affidavit submitted by Inmotion and Robinson in support of their motion to dismiss.  To the extent that the facts are in dispute regarding jurisdictional issues, they are resolved in Plaintiff's favor.  *See Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).

[2] Although Inmotion suggests that the remote control was actually manufactured in Taiwan and purchased by Inmotion from a Taiwanese company, (Mtn. to Dismiss ¶ 3), the affidavit submitted by Inmotion does not establish as much, (*see id.*, Ex. B) (omitting any discussion of the manufacture or origin of the remote control).  Additionally, Inmotion has submitted a purchase order, without a corresponding affidavit, indicating that some 100 remote controls were sent from Pico Test in Taiwan to Inmotion in Texas on July 11, 2005. (Mtn. to Dismiss, Ex. A.)  However, this purchase order alone, particularly without a corresponding affidavit, is insufficient to contradict Plaintiff's allegation that Inmotion participated in the manufacture of the remote control.  Consequently, Plaintiff's allegations regarding Inmotion's participation in the manufacture of the remote control are accepted as true for purposes of the motion to dismiss.  *See Behagen*, 744 F.2d at 733.

[3] Inmotion contends that on December 14, 2005, Duct-o-Wire, in turn, sold the remote to Diversified Inspections, which had it shipped to GCC.  (Mtn. to Dismiss ¶ 5.)  In support of this contention, Inmotion submits a December 14, 2005 invoice, again without a corresponding affidavit, on Duct-o-Wire's letterhead.  (*See* Mtn. to Dismiss, Ex. E.) The invoice indicates that a "RADIO REMOTE 3 MOTION SERIES 322" was sold to Diversified Inspections and shipped to GCC to the attention of "CRANE CARE" on December 14, 2005.  (Mtn. to Dismiss, Ex. E.) However, Inmotion's allegation that the remote control was shipped to GCC on December 14, 2005, is at odds with the allegation in Plaintiff's amended complaint that Crane Care installed the remote in its September 9, 2005 conversion of the crane.  Because allegations in Plaintiff's complaint must be taken as true to the extent they are not controverted by Defendant's affidavits, and because the December 14, 2005 invoice is unsupported by any affidavit, the Court accepts as true Plaintiff's version of these particular facts for purposes of the motion to dismiss.

Dismiss, Ex. B, at ¶ 9.)

On September 9, 2005, Crane Care, Inc. ("Crane Care"), a New Mexico company, performed various conversions and upgrades to the crane pursuant to a contract with Plaintiff's employer, GCC. (Pl.'s Second Amended Complaint ¶ 18.) During these conversions and upgrades, the remote control was installed on the crane, which was located at GCC's place of business in Tijeras, NM. *Id.*

### B. Warranty Repair of the Remote Control

In February 2006, Crane Care sent the remote control from Albuquerque, New Mexico to Inmotion in Texas for a warranty repair. (Mtn. to Dismiss, Ex. B, at ¶ 10.) Robinson, on behalf of Inmotion, performed repairs on the remote control by replacing the coder. (*Id.* ¶¶ 11, 13.) These repairs were performed free of charge under a product warranty. (*Id.*) Inmotion then shipped the remote back to Crane Care in Albuquerque, New Mexico on February 7, 2006. (Mtn. to Dismiss, Ex. F.) Since the warranty repair, neither Inmotion nor Robinson has had any contact with Crane Care. (Mtn. to Dismiss, Ex. B, at ¶ 12.)

### C. Plaintiff's Injuries

On or about February 23, 2006, GCC asked Crane Care to address problems that it was having with the crane and/or the remote control. (Pl.'s Second Amended Complaint ¶¶ 22, 25.) Crane Care serviced the crane and/or the remote control and reported to GCC that repairs were complete. (*Id.* ¶ 26.) Thereafter, Plaintiff, a mill laborer for GCC, began assisting with the removal of an elevated mill man head. (*Id.* ¶ 27.) As Plaintiff attempted to straighten an I-bolt and choker that was attached to the crane, the line became tense. (*Id.*) Then, the crane failed to respond when an operator, attempting to stop the crane from moving upward, pressed the "stop" button on the remote. (*Id.* ¶ 28.) Plaintiff's fingers became caught in the steel cables of the crane. (*Id.*) Two of

3

the tips of Plaintiff's fingers were amputated through avulsion, and he sustained a severely torn rotator cuff in his right shoulder.  (*Id.* ¶ 29.)

### D.  Inmotion and Robinson's Contacts with New Mexico

Inmotion and Robinson are Texas corporations with their principal offices in Garland, Texas. (Mtn. to Dismiss, Ex. B, at ¶¶  5, 6.)  Inmotion does not have employees but pays Robinson an administration fee to carry out purchase orders and to service repairs.  (Mtn. to Dismiss, Ex. B, at ¶ 13.)  All repairs are done by Robinson at their place of business in Dallas, Texas; Robinson does not perform repairs in the field.  (*Id.*)

Inmotion and Robinson have not done any of the following activities in New Mexico: registered to conduct business; maintained any office, employees, representatives, or agents; authorized or appointed an agent for service of process; been a plaintiff in litigation; owned or leased property; paid taxes or filed tax returns; maintained a bank account; or maintained a telephone listing or mailing address. (Mtn. to Dismiss ¶¶ 14-21.)  Neither Inmotion nor Robinson has sold any goods, products, or services in New Mexico since 1984.  (*Id.* ¶ 11.)

However, it is undisputed that Inmotion and Robinson performed repairs on the remote control pursuant to a product warranty in early February 2006, receiving the remote control from and returning it to Crane Care in Albuquerque, New Mexico.  (Mtn. to Dismiss, Ex. B, at ¶ 11.) Then, the alleged malfunction of the remote control occurred on February 23, 2006, just weeks after the warranty repairs were performed by Inmotion and Robinson. (Pl.'s Second Amended Complaint ¶¶ 22, 25.)

Additionally, Inmotion maintains a website on the Internet, which touts "satisfied customers worldwide."  (Pl.'s Response, Ex. A.)   The site includes a "Contact Us" page through which inquiries can be made to the company.  (*Id.* 2.)   The "Contact Us" page also allows an inquirer to

4

indicate how they learned of Inmotion, listing "Google" and "Yahoo" search engines as examples. (*Id.*)  Although Inmotion's presence on the Internet is undisputed, there is no allegation that the company's website was the catalyst for Inmotion or Robinson's performance of warranty services on the remote control, or for any other commercial transaction between the parties.

## II.  PROCEDURAL HISTORY

On February 20, 2009, Plaintiff filed his Second Amended Complaint against Inmotion, Robinson, and Duct-o-Wire, among others, alleging negligence and strict liability.  (Pl.'s Second Amended Complaint ¶¶ 11-17.)  More specifically, Plaintiff alleged that Inmotion, Robinson, and/or Duct-O-Wire "designed, developed, tested, manufactured and/or distributed" the remote control which controlled the crane that injured him. (Pl.'s Second Amended Complaint ¶ 13.)  Although Plaintiff filed this amended complaint in State Court, Defendant Columbus McKinnon Corporation ("Columbus McKinnon") filed a Notice of Removal with this Court on April 22, 2009, alleging jurisdiction based on diversity of citizenship.  Inmotion and Robinson filed their motion to dismiss on May 7, 2009, alleging lack of personal jurisdiction.  Thereafter, Duct-o-Wire filed a motion to amend its answer, on November 20, 2009, attempting to assert a cross-claim for indemnity against Inmotion and Robinson.

## III.  STANDARD OF REVIEW

### A.  Personal Jurisdiction

The personal jurisdiction requirement flows from the Due Process clause of the Fifth Amendment, protecting an individual's liberty interest in avoiding the burdens of litigating in an unfair or unreasonable forum.  *See Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1210-11 (10th Cir. 2000).  Federal Rule of Civil Procedure 12(b)(2) allows a party to assert by motion the defense of lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "The plaintiff bears the burden

of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984).  Where no evidentiary hearing is held, though, a plaintiff only needs to make a *prima facie* showing that personal jurisdiction exists.  *Cory v. Aztec Steel Bldg., Inc*., 468 F.3d 1226, 1229 (10th Cir. 2006).  In such a case, the allegations of the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.  *Behagen*, 744 F.2d at 733.  If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding a contrary presentation by the moving party.  *Id.*

### B.  Motion to Amend

Federal Rule of Civil Procedure 15(a) authorizes a party to amend its pleadings with leave of court.  *See* Fed. R. Civ. Pro. 15(a).  The rule states that "leave shall be freely given when justice so requires."  *Id.*  A court, however, may deny a motion for leave to amend, as futile, when the proposed amended pleading would be subject to dismissal for any reason.  *See E.Spire Communications, Inc. v. N.M. Pub. Reg. Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004). Additionally, a court may consider other factors – including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, and undue prejudice to the opposing party – when deciding whether to grant leav

.e to amend.  *First City Bank, N.A. v. Air Capital Aircraft Sales, Inc*., 820 F.2d 1127, 1132 (10th Cir. 1987).

## IV.  DISCUSSION

### A. Motion to Dismiss

In their joint motion to dismiss, Inmotion and Robinson claim that this Court may not exercise personal jurisdiction over them.  A plaintiff attempting to assert personal jurisdiction over

a defendant must show both that personal jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process. *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2007). Thus, because New Mexico is the forum state, its law must be considered first in determining whether there is personal jurisdiction over Inmotion and Robinson.

New Mexico's long-arm statute[4] uses a three-step test to determine if personal jurisdiction exists:  1) the defendant's act must be one of the five enumerated in the long-arm statute; 2) the plaintiff's cause of action must arise from the act; and 3) minimum contacts sufficient to satisfy due process must be established by the defendant's act. *See Tercero v. Roman Catholic Diocese of Norwich*, 48 P.3d 50, 55 (N.M. 2002). However, because the reach of New Mexico's long-arm statute extends personal jurisdiction as far as constitutionally permissible, *F.D.I.C. v. Hiatt*, 872 P.2d 879, 882 (N.M. 1994), the analysis of a defendant's relevant business transaction merges with the inquiry of whether such activities constitute minimum contacts sufficient to satisfy due process concerns. *See Tercero*, 48 P.3d at ¶ 8; *Pierce v. Cambria Co.*, No. 03cv1282 LFG/RLP, at 4 (D.N.M. Jan. 27, 2004) (noting that "the three inquiries collapse into just one: whether there are minimum contacts between the defendant and the forum state"). Put simply, here, the determination

---

[4] New Mexico's long-arm statute, in pertinent part, provides:

A.  Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

      (1) the transaction of any business within this state; . . .

      (3) the commission of a tortious act within this state; . . .

C.  Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

NMSA § 38-1-16.

of whether the defendants committed an enumerated act within New Mexico has evaporated, and only the due process analysis remains.

The due process analysis is itself a two-step process.  First, a court must determine whether there are "minimum contacts" between the defendant and the forum state.  *Intercon,* 205 F.3d at 1247 (10th Cir. 2000) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  Second, a court must determine whether the exercise of jurisdiction over the defendant is reasonable – that is, that it would not "offend traditional notions of fair play and substantial justice." *OMI Holdings*, *Inc. v. Royal Insur. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987)).

## 1.  Minimum Contacts

The minimum contacts inquiry serves several related but distinguishable purposes.  First, it protects a defendant from having to defend a lawsuit in a jurisdiction where he has no meaningful contacts and therefore may be unfamiliar with the forum's law.  *Origins Natural Res., Inc. v. Kotler*, 133 F. Supp. 2d 1232, 1235 (D.N.M. 2001).  Second, it ensures that state courts do not reach beyond the limits imposed on them by their status as coequal sovereigns in a federal system.  *Id.*

The minimum contacts standard may be met in one of two ways: 1) a court may exercise general jurisdiction when the defendant's contacts with the forum state are continuous and systematic; or 2) a court may exercise specific jurisdiction if a defendant has purposefully directed his activities at residents of the forum *and* the litigation results from alleged injuries that arise out of or relate to those activities.  *Kuenzle v. HTM Sport-Und Freizeitgerte AG*, 102 F.3d 453, 455-56 (10th Cir. 1996).

Here, Plaintiff concedes that Inmotion and Robinson's contacts with New Mexico "were not numerous."   (Pl.'s Resp. 5.)  It is undisputed that these defendants have not done any of the

8

following activities in New Mexico: registered to conduct business; maintained an office, employees, representatives, or agents; authorized or appointed an agent for service of process; been a plaintiff in litigation; owned or leased property; paid taxes or filed tax returns; maintained a bank account; maintained a telephone listing or mailing; or sold any goods, products, or services since 1984. To be sure, a single warranty-related transaction, performed in Texas but for a New Mexico company, does not constitute continuous or systematic contact with New Mexico. As such, the Court may not exercise general jurisdiction over Inmotion or Robinson.

Without contacts sufficient to satisfy general jurisdiction, Plaintiff is left to make a *prima facie* showing of specific jurisdiction -- that Defendants purposefully directed activities at residents of New Mexico and that the present litigation resulted from injuries arising out of those activities. *See Kuenzle*, 102 F.3d at 455-56. Because the record reveals only one direct contact, or series of contacts, between Inmotion and/or Robinson and a New Mexico resident, it is this transaction – the performance of warranty repair work on the remote control – on which the minimum contacts analysis hinges. Notably, even a single transaction of business within New Mexico might, under some circumstances, support the exercise of personal jurisdiction, so long as the plaintiff's cause of action arises from the transaction of that particular business. *Customwood Mfg., Inc. v. Downey Constr. Co.*, 691 P.2d 57, 58 (N.M. 1984).

The purported malfunction of the remote control is indeed a central issue in this action. Plaintiff alleged in his amended complaint that he sustained injuries when an operator unsuccessfully attempted to stop the crane from moving upward by pressing the "stop" button on the remote control. (Second Amended Complaint ¶ 28.) Thus, broadly speaking, Plaintiff's cause

of action concerns the condition and performance of the remote control on the date of his injuries.[5]

Significantly, warranty repairs were performed by Inmotion and Robinson on this very remote

control just weeks before the  alleged malfunction that caused Plaintiff's injuries.   Although there

is a nexus between Plaintiff's cause of action and the nonresident defendants' contact with New

Mexico, personal jurisdiction may only be exercised over these defendants if the other requirements

of the due process clause are satisfied.

### a.  Purposeful Availment

In addition to establishing a nexus between the contact with the forum state and Plaintiff's

cause of action, Plaintiff must also establish that Inmotion and Robinson purposefully availed

themselves of the privilege of conducting activities in New Mexico.  *See Hanson v. Denckla*, 357

U.S. 235, 253 (1958);  *Rambo v. Amer. Southern Ins. Co.,* 839 F.2d 1415, 1419 (10th Cir. 1988)

(noting that "it is essential in each case that there be some act by which the defendant purposefully

avails itself of the privilege of conducting activities within the forum State, thus invoking the

benefits and protections of its laws"); *see also State Farm Mutual Ins. Co. v. Conyers*, 784 P.2d 986,

988 (N.M. 1989) (describing the purposeful availment inquiry as the "key focus" under the due

process standard).  Primarily, the "'purposeful availment' requirement ensures that a defendant will

not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts,

---

[5] The Court acknowledges that the allegations of Plaintiff's amended complaint itself do not support a cause of action based specifically on faulty warranty repairs.  (*See* Second Amended Complaint ¶ 68) (alleging negligent design, development, or testing with respect to Inmotion and Robinson); (*Id.* ¶ 72) (noting that the remote control, at the time of its malfunction, was "in substantially the same condition as when it was originally designed, developed, tested and sold").  Accordingly, the warranty transaction does not technically give rise to the specific allegations in Plaintiff's amended complaint.  However, it appears from Plaintiff's response brief that he only learned that warranty repairs were performed on the remote control by Inmotion and Robinson after these defendants admitted as much in their motion to dismiss.  (*See* Pl.'s Resp. 3) ("According to the implication in [the motion to dismiss], Robinson may have completed the repair on the remote that malfunctioned which, in part, forms the basis for this litigation.") Given the early stage of discovery in this case, the Court will grant Plaintiff considerable leeway with respect to the details of his cause of action, and will construe the cause of action broadly – as one related to the condition and performance of the remote control – for purposes of this motion to dismiss.

or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Inmotion and Robinson maintain that they did not purposefully avail themselves of the privilege of transacting business within New Mexico, even when they performed repairs on the remote control pursuant to a warranty obligation that Inmotion owed to a New Mexico warranty holder.  They insist that the warranty work that they performed was "attributable solely to the actions of Crane Care" and not "to any affirmative conduct by Inmotion and Robinson [] that allow[ed] or promote[d] the transaction of business within New Mexico."  (Mtn. to Dismiss 8.)

Plaintiff, on the other hand, asserts three bases for a finding of purposeful availment: 1) Inmotion maintains an Internet website, which was accessible in New Mexico and which represents that Inmotion and Robinson are "world-wide companies"; 2) the remote control was repaired by Inmotion and Robinson subject to a pre-existing warranty agreement; and 3) Inmotion and Robinson knew that their product was in the stream of commerce in New Mexico.  (*See* Pl.'s Resp. 5.)

### i.  Inmotion's Website

First, the Court must determine whether Inmotion's website was, under the circumstances, a contact sufficient to support specific jurisdiction over Inmotion and/or Robinson in New Mexico. In such cases, the Tenth Circuit has adopted the analysis set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., 952 F. Supp. 1119 (W.D. Pa. 1997).  *See Soma Med. Int'l v. Std. Chart. Bank*, 196 F.3d 1292 (10th Cir. 1999).   Accordingly, a passive website, which merely gives out information to interested viewers, is not grounds for the exercise of personal jurisdiction. *Id.* at 1297.  The exercise of personal jurisdiction, then, hinges on the level of interactivity and the commercial nature of the information exchange that occurs on the website.  *See id.* at 1296.

In this case, customers interested in Inmotion's products could submit contact information

and request product information through Inmotion's website. Plaintiff does not allege, however, that products were actually purchased via Inmotion's website. Thus, both the level of interactivity and the commercial nature of the information exchange via the website were slight.

More importantly, Plaintiff does not suggest that Inmotion's website was actually the catalyst for any contact between Inmotion or Robinson and a New Mexico resident, much less a contact that gave rise to Plaintiff's cause of action. If no relevant commercial information was exchanged via the website, and the website was not the impetus for the warranty repair transaction, the website's existence is not a basis for specific jurisdiction. *See Pierce*, No. 03cv1282 LFG/RLP, at 12; *see also Lyle v. Homier Distributing Co., Inc.*, No. 07cv621 JP/WPL, at 12 (D.N.M. Dec. 15, 2008) (dismissing consideration of a defendant's website-related activities, under a specific jurisdiction analysis, where they were not "part of the chain of causality leading to the claims in [the] suit").

### ii. Warranty Repairs

Next, the Court must determine whether warranty repairs performed by Inmotion and Robinson pursuant to Inmotion's product warranty support the exercise of personal jurisdiction over Inmotion and Robinson in New Mexico. Initially, the Court considers whether a warranty obligation owed to a resident of the forum, without more, supports such an exercise of jurisdiction.

Inmotion and Robinson readily admit that, in performing warranty repairs on the remote control, Inmotion was "performing what it had already contractually committed itself to doing at the time of sale to [Duct-o-Wire.]" (Reply 9.)   Apparently, when Inmotion sold the remote control to Duct-o-Wire, it created a warranty obligation that would extend to subsequent purchasers of the remote control, including GCC. The question arises, then, whether a warranty obligation, which becomes owed to a New Mexico resident by virtue of a subsequent sales transaction, is of any consequence to the due process analysis.   The Court concludes that it is not.

12

A warranty obligation owed to a resident of the forum, without more, is insufficient to satisfy the purposeful availment requirement. *See Sorrells v. R & R Custom Coach Works, Inc*., 636 So.2d 668 (Miss. 1994) (determining that personal jurisdiction could not be exercised in Mississippi over the manufacturer of a motor home in a breach of warranty action, even though the manufacturer owed warranty obligations to the Mississippi resident, because the company had not purposefully directed its activities towards Mississippi); *see also Burger King,* 471 U.S. at 478 (determining that "an individual's contract with an out-of-state party alone" does not establish sufficient minimum contacts in the other party's forum).

At the time that the warranty obligation arose (i.e. the initial sale of the remote control to Duct-o-Wire), neither Inmotion nor Robinson knew that the remote control would end up in New Mexico or that the warranty obligation would someday extend to a New Mexico resident. Moreover, on the present record, it appears that Inmotion and Duct-o-Wire were fully independent companies that entered into an arms-length contractual relationship culminating in the sale of remote controls to Duct-o-Wire in Wisconsin. There is no indication, for example, that Inmotion somehow directed the channels of distribution that the remote control would take after the sale to Duct-o-Wire. On these facts, the warranty obligation ultimately owed by Inmotion to GCC of New Mexico does not support the exercise of jurisdiction over Inmotion in New Mexico. However, Inmotion and Robinson's actual contact(s) with New Mexico during the course of the warranty repair transaction warrant additional scrutiny.

Again, under the minimum contacts analysis, there must be some act by which the nonresident party "purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson*, 357 U.S. at 253. The Supreme Court, discussing the purposeful availment requirement, has said:

> [T]he constitutional touchstone remains whether the defendant purposefully
> established 'minimum contacts' in the forum State. . . . 'The unilateral activity
> of those who claim some relationship with a nonresident defendant cannot satisfy
> the requirement of contact with the forum State.  The application of that rule will
> vary with the quality and nature of the defendant's activity, but it is essential in
> each case that there be some act by which the defendant purposefully avails itself
> of the privilege of conducting activities within the forum State, thus invoking the
> benefits and protections of its laws.'. . . This 'purposeful availment' requirement
> ensures that a defendant will not be haled into a jurisdiction solely as a result of
> 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity
> of another party or a third person.'  Jurisdiction is proper, however, where the
> contacts proximately result from actions by the defendant himself that create a
> 'substantial connection' with the forum State.

*Burger King*, 471 U.S. at 474-75.  In its own discussion of the purposeful availment requirement,

the Tenth Circuit has noted that the "[p]urposeful availment analysis turns upon whether the

defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . .

[and generally] requires . . . affirmative conduct by the defendant which allows or promotes the

transaction of business within the forum state."  *Rambo*, 839 F.2d at 1420 (citing *Decker Coal Co.*

*v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986)).

Here, relatively little information is available of record as to how Inmotion and Robinson

came to perform the warranty repairs on the remote control.  For instance, the parties do not discuss

with specificity any correspondence between the companies concerning the repair.  Rather, Inmotion

and Robinson characterize the transaction as a contact "attributable solely to the actions of Crane

Care . . . not attributable to any affirmative conduct by Inmotion and Robinson Engineering that

allows or promotes the transaction of business within New Mexico."  (Mtn. to Dismiss 8.)

Significantly, Plaintiff does not dispute that Crane Care initiated the transaction by requesting the

repair; nor does he suggest that Inmotion or Robinson somehow solicited the warranty repair work

from Crane Care or GCC.

That Inmotion and Robinson did not initiate or solicit the warranty repair transaction weighs

in favor of a determination that these defendants did not purposefully avail themselves of the privilege of conducting business within New Mexico. After all, personal jurisdiction requires some affirmative conduct by the nonresident defendants allowing or promoting the transaction of business here. *See Rambo*, 839 F.2d at 1419. The unilateral conduct of a forum resident, such as a request for repair services, does not suffice. *See World-Wide Volkswagen*, 444 U.S. at 298.

Moreover, the repairs were performed outside of the forum, in Texas. As a general proposition, warranty repair work performed out-of-state for a resident of the forum state is insufficient to establish purposeful availment. *See Marshall v. Bounds Autoplex, LLC*, No. 3:08cv00135 BSM, 2008 U.S. Dist. LEXIS 92958, at *7-8 (E.D. Ark. Nov. 5, 2008) (holding that a dealership, which performed warranty work under a manufacturer's warranty in Texas for a plaintiff in Arkansas, "neither purposely availed itself of the privilege of conducting activities within Arkansas or invoked the benefits and protection of its laws."); *see also Rambo*, 839 F.2d at 1418 ("The mere fact that [a Texas defendant] was employed . . . to repair the property of Oklahoma residents will not support [personal] jurisdiction [in Oklahoma].") Accordingly, the warranty repairs alone, performed in Texas but for a New Mexico resident, are insufficient to establish purposeful availment or minimum contacts with New Mexico.

Insofar as the record reveals, the sole contact with New Mexico initiated by Inmotion and/or Robinson, during the entire course of the warranty repair transaction, was Inmotion's return of the remote control to Crane Care after the completion of repairs. However, it is significant that Inmotion did not independently choose to send the remote control to New Mexico; rather, the necessity of returning the remote to New Mexico was dictated by Crane Care's repair request and delivery of the remote to Inmotion in Texas. Because this contact with New Mexico occurred when Crane Care unilaterally reached out to Inmotion in Texas, it fails to satisfy the purposeful availment

15

requirement.

### iii.  Stream of Commerce Theory

Finally, the Court must determine whether purposeful availment was accomplished, alternatively, under the stream of commerce theory.  This theory has found support in United States Supreme Court precedent, at least in dicta, since *World-Wide Volkswagen*.

In *World-Wide Volkswagen*, the Court noted that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."  *World-Wide Volkswagen*, 444 U.S. at 297-98.  Similarly, the Court reasoned that, "if the sale of a product of a manufacturer . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer . . . to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others."  *Id.*

Thereafter, the Supreme Court was confronted more directly with the stream of commerce theory in *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102 (1987).  In *Asahi*, the Court disagreed, in a four-to-four split, over whether a manufacturer's placement of a product into the stream of commerce, without more, constituted a sufficient contact with the forum state to allow the exercise of personal jurisdiction over the manufacturer there.  The Court resolved the jurisdictional issue on the "traditional notions of fair play and substantial justice" prong of the due process analysis.  *Id.* at 116.  However, the Court was split regarding whether minimum contacts with the forum state existed under the stream of commerce theory.  *Id.*  Two different tests were articulated for the stream of commerce theory in the Court's two four-vote plurality opinions.  *Id.* at 109-113, 116-121.  Justice O'Connor offered a slightly more stringent test, reasoning that "[t]he

16

placement of a product into the stream of commerce, without more, is not an act . . . purposefully directed toward the forum State." *Id.* at 112.  Under O'Connor's test, mere "awareness that the stream of commerce may or will sweep the product into the forum State" is not enough to satisfy minimum contacts; instead, there must be "additional conduct . . . indicat[ing] an intent or purpose to serve the market in the forum State." *Id.*  Justice Brennan, on the other hand, refused to require a showing of "additional conduct" under the theory, concluding that the manufacturer's awareness that the final product was being marketed in the forum state was sufficient to establish purposeful availment. *Id.* at 117.

Because an equal number of Justices subscribed to each test articulated in the Court's plurality opinions, application of the stream of commerce theory has since become somewhat of a "muddle."  4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.4 at 497 (3d. ed. 2002).  Attempting to make sense of the stream of commerce theory in the wake of *Asahi*, courts have taken varied approaches.  For instance, some have applied both *Asahi* standards, Justice O'Connor's standard first, followed by Justice Brennan's standard.  *See, e.g., Pennzoil Prods. Co. v. Colelli & Assoc., Inc.*, 149 F.3d 197, 207 n.11 (3rd Cir. 1998).  Others have relied upon *Asahi's* stream-of-commerce predecessor, *World-Wide Volkswagen*, for guidance.  *See, e.g., Irving v. Owens-Corning Fiberglas Corp.*, 864 F.2d 383 (5th Cir. 1989).  The Tenth Circuit, however, has not had occasion to address the application of the stream of commerce theory post-*Asahi*.  Moreover, contrary approaches have been taken by courts in this district.  *Compare Lyle v. Homier Distrib. Co., Inc.*, 07cv621 JP/WPL (D.N.M. Dec. 15, 2008) (applying O'Connor's *Asahi* test, reasoning that if the most stringent test is satisfied, the less stringent test must also be satisfied) *with Gonzales v. The Goodyear Tire and Rubber Co.*, 05cv941 BB/LFG (D.N.M. July 6, 2006) (relying on *Worldwide Volkswagen* as the last clear guidance on the issue).

17

Given the Supreme Court's splintered stream of commerce analysis in *Asahi,* and the lack of direction from the Tenth Circuit after *Asahi,* the bottom line is that *World-Wide Volkswagen* is the last clear guidance available in applying the theory.  With this in mind, the Court gauges Inmotion and Robinson's contacts with New Mexico by the stream of commerce theory as described in *World-Wide Volkswagen,* as well as in the several Tenth Circuit products liability cases following *World-Wide Volkswagen*.  Doing so produces a determination that there was no purposeful availment by Inmotion or Robinson, even upon placement of the remote control into the stream of commerce.

Here, there is no evidence that Inmotion, when  it placed the remote control into the stream of commerce, expected that the remote control would thereafter be purchased by consumers in New Mexico.  Relatedly, there is no evidence that the sale of the remote control to Duct-o-Wire arose from efforts by Inmotion to serve, even indirectly, the market for its products in New Mexico. Inmotion had not sold any products directly to New Mexico since 1984, and Plaintiff presents no evidence suggesting that Inmotion's remote controls had previously been sold to New Mexico residents, even by middlemen.  Under the guidance of *World-Wide Volkswagen*, the exercise of personal jurisdiction over Inmotion and Robinson is not proper under the stream of commerce theory.

Tenth Circuit law provides further support for this determination.  The Tenth Circuit has discussed the stream of commerce theory in several products liability cases: *Shanks v. Westland Equip. and Parts Co.*, 668 F.2d 1165 (10th Cir. 1982) and  *Fidelity and Cas. Co. of New York v. Philadelphia Resins Corp.*, 766 F.2d 440 (10th Cir. 1985).  The temporal posture of these cases is uniquely relevant given this Court's favored approach of applying *World-Wide Volkswagen's* stream of commerce analysis in lieu of applying both standards articulated in *Asahi*.   Both *Shanks* and

18

*Fidelity* were written during the period between *World-Wide Volkswagen* and *Asahi*, and, therefore, in each case the court necessarily relied upon *World-Wide Volkswagen* without considering the *Asahi* tests.

First, in *Shanks*, the Tenth Circuit determined that a nonresident trailer manufacturer had a sufficient connection with Wyoming to support personal jurisdiction there. *Shanks*, 668 F.2d at 1166.  The trailer manufacturer was an Oregon corporation without offices, agents, or salespersons in Wyoming.  *Id.*  However, its "sister corporation," to which it sold trailers, did business in Wyoming.  *Id.*  In reaching its determination that the exercise of personal jurisdiction was appropriate, the court emphasized the close relationship between the trailer manufacturer and its sister corporation, characterizing them as "related corporations owned by the same family."  *Id.* at 1167.  As a result of the sister corporation's ongoing business in Wyoming, the manufacturer's trailers regularly entered the State.  *Id.*  The court noted that "[u]nlike *World-Wide Volkswagen*, it [was] not merely fortuitous that [the] trailers [were] used in Wyoming; it [was] a forgone conclusion that they [would] be so used." *Shanks*, at 1168.  Drawing from the stream of commerce analysis in *Gray v. Amer. Radiator & Standard Sanitary Corp.*, 176 N.E.2d 761 (Ill. 1961), the court concluded that "if a corporation elects to sell its products for ultimate use in another State, it is not unjust to hold it answerable there for any damage caused by defects in those products." *Shanks*, 668 F.2d at 1168 (citing *Gray*, 176 N.E.2d at 766.)  Essentially, because the trailer manufacturer sold trailers to its sister corporation knowing that they would be used in Wyoming, it was appropriate to exercise personal jurisdiction over the trailer manufacturer in Wyoming.  *Id.* at 1168.

The facts of this case can be distinguished from *Shanks* in two ways.  First, there is no indication of a significant relationship or corporate affiliation between Inmotion and Duct-o-Wire.  Rather, it appears that the remote control was sold to Duct-o-Wire as part of an arms-length sales

transaction.  Second, unlike the nonresident defendant in *Shanks*, Inmotion did not know, at the time

that it sold the remote control to Duct-o-Wire, that the remote control would eventually be sold to

a resident of the forum.   For these reasons, *Shanks* does not support the exercise of personal

jurisdiction over Inmotion and Robinson in New Mexico.

Next, in *Fidelity*, the Tenth Circuit determined that a nonresident cable manufacturer's

contacts with the state of Utah were insufficient to support the exercise of personal jurisdiction

there.  *Fidelity*, 766 F.2d at 446.  Once again, the court referenced the stream of commerce analysis

in *Gray*.  *Id.* at 445.  Additionally, the court explained that the "limits of the 'stream of commerce'

theory exemplified by *Gray* were delineated by the United States Supreme Court in *World-Wide

Volkswagen*."  *Id.*  The court noted a subtle but critical distinction between *Gray* – a case where

personal jurisdiction existed under a stream of commerce theory – and *World-Wide Volkswagen* –

a case where it did not:

> If a defendant's product comes into the forum state as a result of a deliberate,
> although perhaps indirect, effort of the defendant to serve the forum state's market,
> then the defendant is subject to jurisdiction there.  Placing one's product into the
> 'stream of commerce' with the expectation of distribution into particular areas is the
> classic example of such an indirect effort.  If, however, the defendant's product
> comes into the forum state as a result of the actions of an unconnected third party or
> of fortuitous events over which the defendant has no control, then the defendant is
> not subject to jurisdiction in the forum state.

*Id.* at 446.

Applying this rationale to the facts presented in *Fidelity*, the court determined that, there, the

cause of action arose from the cable manufacturer's advertising efforts in Arkansas, together with

the fortuitous transport of its cables to Utah, not from any effort of the manufacturer to either sell

its cables in Utah or to transport its products there.  *Id.*  Although the court acknowledged that the

cable manufacturer anticipated that the cables would be used in the Rocky Mountain region, it

20

ultimately found the company's relationship to the Utah market "too attenuated' to support personal jurisdiction under the stream of commerce theory.  *Id.* at 447.

Similarly, here, the record lacks any indication that the remote control arrived in New Mexico as the result of efforts by Inmotion or Robinson to either sell or transport the product there. Once again, Inmotion did not know that the remote control would arrive in New Mexico, and there is no evidence that it established, directed, or even monitored the chain of distribution after its sale to Duct-o-Wire.  Additionally, Plaintiff offers no evidence regarding the breadth of distribution for remote controls sold by Inmotion or regarding limits Inmotion placed, or failed to place, on the states in which the remote controls could be sold or used.  The Court can only conclude that the remote control arrived in New Mexico as a result of the fortuitous actions of a third party, Duct-o-Wire, when it entered into an independent sales transaction involving the remote control.  As in *Fidelity*, Inmotion and Robinson's relationship to the New Mexico market are simply too attenuated to support personal jurisdiction under the stream of commerce theory.   Because Inmotion's initial sale of the remote control was not an act purposefully directed toward New Mexico, the exercise of personal jurisdiction over Inmotion and Robinson, even under the stream of commerce theory, is improper.

To the extent that Plaintiff argues that Inmotion placed the remote control into the stream of commerce when it returned the remote control to Crane Care in New Mexico on February 7, 2006, and thereby purposefully availed itself of the privilege of doing business within New Mexico, he is mistaken.   The stream of commerce theory contemplates a deliberate decision by a manufacturer or distributor to serve, directly or indirectly, the market for a product in the forum state.  *See, e.g., World-Wide Volkswagen*, 444 U.S. 297-98.  The essentially non-volitional return of a product to the forum state, after performing requested repairs, does not fit this scenario or

otherwise satisfy the purposeful availment requirement.

In sum, Plaintiff has failed to make a *prima facie* showing that Inmotion and/or Robinson purposefully availed themselves of the privilege of doing business within New Mexico. The requirements for personal jurisdiction are not satisfied by Inmotion's website, by the warranty repair transaction between Crane Care and Inmotion and/or Robinson, or by Inmotion's placement of the remote control into the stream of commerce. Therefore, Inmotion and Robinson lack sufficient minimum contacts with New Mexico to subject themselves to jurisdiction here.[6]

### B.  Motion to Amend

On November 20, 2009, Duct-o-Wire filed its motion to amend, attempting to assert a cross-claim for indemnity against Inmotion and Robinson. However, the Court's determination herein that Inmotion and Robinson are not subject to personal jurisdiction in New Mexico renders futile Duct-o-Wire's motion to amend. Given the lack of personal jurisdiction over Inmotion and Robinson, the Court may not entertain the cross-claims that Duct-o-Wire attempts to assert. Thus, Duct-o-Wire's motion to amend is denied as futile.

## V.  CONCLUSION

For all of these reasons, the Court finds that it is without personal jurisdiction over Inmotion and Robinson, and that, accordingly, Plaintiff's claims against these defendants are dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Defendants Robinson Engineering Co., Inc. and Inmotion Control, Inc.'s  Joint Motion to Dismiss Plaintiff's Second Amended Complaint Against

---

[6] Having determined that Inmotion and Robinson did not have the requisite minimum contacts with New Mexico, the Court need not address the second prong of the due process analysis – that is whether the assertion of personal jurisdiction would comport with "fair play and substantial justice."  *See Rambo*, 839 F.2d at 1419 n.6.

Them for Lack of Personal Jurisdiction (Doc. 15) is hereby **GRANTED** and Defendants Inmotion Control, Inc. and Robinson Engineering Co., Inc. are hereby **DISMISSED WITHOUT PREJUDICE.**

IT IS FURTHER ORDERED that Defendant Duct-o-Wire's Motion and Memorandum to Amend Answer and Assert Cross-Claim for Indemnity Against Defendants Inmotion Control, Inc. and Robinson Engineering (Doc. 44) is hereby **DENIED.**

_____
SENIOR UNITED STATES DISTRICT JUDGE